

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BROWN BYRON,                                    )
                                                     )
                   Plaintiff,                         )
                                                     )
        v.                                             )
                                                     )
THOMAS DART, individually and as Cook          )     No. 11 C 64
County Sheriff, MICHAEL MILLER,                )
individually and as Superintendent of Cook     )     Judge Ruben Castillo
County Jail, SALVADOR GODINEZ,                 )
individually and as Executive Director of       )
Cook County Jail, Corrections Officer FNU       )
ALLEN, individually and as Corrections Officer of )
Cook County Jail, and COUNTY OF COOK,          )
                                                     )
                  Defendants.                        )

## MEMORANDUM OPINION AND ORDER

Byron Brown ("Brown" or "Plaintiff")[1] brings this action pursuant to 42 U.S.C. § 1983

("Section 1983") against Cook County Sheriff Thomas Dart, Superintendent of Cook County Jail

Michael Miller, Executive Director of Cook County Jail Salvador Godinez, and Corrections

Officer First Name Unknown (FNU) Allen, in their official and individual capacities, and Cook

County. (R. 5, Am. Compl.) Presently before the Court is a motion to dismiss by Dart, Miller,

and Godinez (collectively, "Defendants"), in their individual capacities, pursuant to Federal Rule

of Civil Procedure 12(b)(6). (R. 19, Defs.' Mot.) For the reasons stated below, the motion is

denied.

### FACTS

---

[1] Although the caption lists Plaintiff's name as "Brown Byron," Plaintiff's actual name is Byron Brown. When Brown filed his initial pro se complaint, he recorded his name as "Brown Byron." (R. 1, Compl.) The Court will refer to him by his correct last name.

Brown is a pretrial detainee incarcerated at Cook County Jail (the "Jail"). (R. 5, Am. Compl. ¶ 1.) Dart is the Sheriff of Cook County and is responsible for the operation of the Jail and its employees. (*Id.* ¶ 6.) Godinez is the Executive Director of Cook County Jail and is directly responsible for the operation of the Jail and its employees. (*Id.* ¶ 7.) Miller is the Superintendent of Division 10 of Cook County Jail, and is directly responsible for the operation of Division 10 and its employees. (*Id.* ¶ 8.) Allen is a corrections officer employed at the Jail. (*Id.* ¶ 9.)

Brown has been a pretrial detainee at Division 10, Section 4-C of the Jail since July 3, 2009. (*Id.* ¶ 10.) During his pretrial detention at the Jail, Brown became aware, from his own observations and in speaking with other detainees, that numerous cells were "in a state of disrepair and/or had malfunctioned." (*Id.* ¶ 11.) Specifically, the doors of the cells could be "popped" open by detainees from the outside without a key. (*Id.*)

Brown alleges that the condition of the cell doors was "widespread and common knowledge" throughout the Jail, and that Defendants were aware the problem. (*Id.* ¶¶ 12, 15.) According to Brown, work orders had been submitted to repair the doors, but they had not been carried out. (*Id.* ¶ 12.) Department of Justice ("DOJ") officials inspected the condition of the Jail and reported the malfunctioning cell doors to Cook County employees. (*Id.* ¶ 14.) Brown and others made complaints about the defective condition of the Jail's doors. (*Id.* ¶ 15.) Brown's cell door, however, was never repaired. (*Id.* ¶ 13.)

On August 6, 2009, Brown was served breakfast in his cell at 3:30 a.m. (*Id.* ¶ 16.) After receiving his breakfast, his cell door was shut and supposedly locked. (*Id.*) Brown ate his food and went back to sleep. (*Id.*) At approximately 4:00 a.m., an unknown detainee "popped" open

the cell door of Brown's cell and rushed into the cell. (*Id.* ¶ 17.) The unknown detainee stabbed Brown's head with a homemade knife while Brown was lying on his bed, and then stabbed him on the right forearm. (*Id.*) Brown jumped out of his bed, and the unknown detainee ran out of the cell. (*Id.*) Brown required staples and stitches in his head and forearm, and now has permanent scars. (*Id.* ¶ 22.)

Division 10 is a direct supervision facility, meaning that a corrections officer is required to be present in or monitoring the unit at all times. (*Id.* ¶ 18.) One of the reasons for this requirement is the protection and safety of detainees. (*Id.*) Corrections Officer Allen worked in Division 10 of the Jail. (*Id.* ¶ 19.) On "numerous prior occasions," Brown observed that Corrections Officer Allen was not present or was sleeping during his shift. (*Id.* ¶ 20.) Brown alleges that this behavior was well known to inmates, corrections officers, and supervisors. (*Id.*) On August 6, 2009, the night that Brown was attacked, Corrections Officer Allen worked the third shift at Division 10, Section 4-C, and was supposed to be supervising the area where Brown was housed. (*Id.* ¶ 19.) At the time of the attack, Officer Allen was either asleep, not paying attention, or away from his post, which allowed the unknown detainee to enter Brown's cell and stab him. (*Id.* ¶ 21.)

On August 10, 2009, Brown submitted a detainee grievance to the Jail officials regarding the incident. (*Id.* ¶ 23.) Brown received a response from Superintendent Miller stating that Brown's version of events was not "accurate." (*Id.*)

## PROCEDURAL HISTORY

Brown filed a pro se complaint on January 5, 2011. (R.1, Compl.) On January 7, 2011, the Court appointed counsel to represent Brown. (R. 4, Min. Entry.) On March 8, 2011, Brown

filed an amended complaint (the "complaint"). (R.5, Am. Compl.) In his complaint, Brown alleges one claim against Defendants for failure to protect Brown in violation of the Fourteenth Amendment. (*Id.* ¶ 1.)

On June 15, 2011, Dart, Miller, and Godinez, in their individual capacities, filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (R. 19, Defs.' Mot.) In their supporting memorandum, Defendants argue that Brown has "failed to make any allegations as to any personal involvement" by Defendants when pleading that they were deliberately indifferent to the conditions of Brown's cell. (R. 20, Defs.' Mem. at 3-4.) Defendants argue that they therefore cannot be held liable as individuals for damages under Section 1983. (*Id.*)

**LEGAL STANDARD**

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject matter of

the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

Because Brown was a pre-trial detainee at the time of the incident giving rise to this suit, his Section 1983 claim is analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Washington v. LaPorte Cnty. Sheriff's Dept.*, 306 F.3d 515, 517 (7th Cir. 2002) (citations omitted). This appears to be a distinction without a difference, however, as "[t]he protections for pre-trial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner" and courts "frequently consider the standards to be analogous." *Id.* (internal quotation marks and citations omitted). As the parties do not make any argument to the contrary, the Court will analyze Brown's claim under standards set forth in both Eighth and Fourteenth Amendment precedent.

As relevant here, it is "well-settled" that both the Eighth and Fourteenth Amendments impose upon prison officials a duty to "take reasonable measures to guarantee the safety of the inmates" in their care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). This includes "protect[ing] inmates from violent assaults at the hands of fellow prisoners." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 833). Not every injury that occurs within a prison, however, leads to constitutional liability for prison officials responsible for the inmate's safety. *Washington*, 306 F.3d at 517. Instead, certain requirements must be met. First, the injury alleged "must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. For a failure to protect claim, as Brown asserts here, he must show that "he was incarcerated under conditions posing a substantial risk of harm[.]" *Grieveson v.*

5

*Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). Second, because the Constitution is only implicated when prison officials have a "sufficiently culpable state of mind[,]" an inmate must show that the prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted).

Here, Defendants do not argue that Brown has failed to allege facts establishing that he was incarcerated under conditions posing "a substantial risk of serious harm." The seriousness of the risk to an inmate whose cell door can be opened from the outside without a key is obvious; the inmate can be attacked or otherwise harmed by other inmates. Thus, Brown has properly pled the first requirement to establish Defendants' individual liability for a failure to protect claim, a "sufficiently serious injury." *See Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

The main dispute here is whether Brown has alleged facts that meet the second requirement to establish Defendants' liability—deliberate indifference on the part of each Defendant.[1] This requirement has two parts: an inmate must show both that the official knew the inmate "faced a substantial risk of serious harm" and "disregarded that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The standard for "deliberate indifference" is subjective; the officer must have "*actual* knowledge" of the impending harm. *Washington*, 306 F.3d at 518 (citations omitted). This is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence[.]" *Farmer*, 511 U.S. at 842. Thus, under some circumstances, "a risk might be so obvious that actual

---

[1] This is, at least, how the Court interprets Defendants' cursory and underdeveloped argument that "Plaintiff failed to make any allegations as to any personal involvement by the specified defendants when pleading that they were deliberately indifferent to the condition of Plaintiff's cell." (R. 20, Defs.' Mem. at 4.) Defendants fail to cite any authority regarding the legal standards applicable to the "deliberate indifference" analysis until their reply brief.

knowledge on the part of prison officials may be inferred." *Washington*, 306 F.3d at 519. This

means that if, for example,

> an Eighth Amendment plaintiff presents evidence showing that a substantial risk of
> inmate attacks was longstanding, pervasive, well-documented, or expressly noted by
> prison officials in the past, and the circumstances suggest that the defendant-official
> being sued had been exposed to information concerning the risk and thus "must have
> known" about it, then such evidence could be sufficient to permit a trier of fact to
> find that the defendant-official had actual knowledge of the risk.

*Farmer*, 511 U.S. at 842-43 (internal quotation marks and citations omitted).

Here, Brown has alleged facts that plausibly suggest that Defendants had the requisite

knowledge of the malfunctioning cell doors. First, the facts alleged indicate that the problem was

"pervasive," "well-documented," and "expressly noted by prison officials in the past." Brown

points to numerous complaints filed, work orders placed, and the investigation and findings of

the DOJ. (R. 5, Am. Compl. ¶¶ 11-14.) Additionally, although the positions of Dart, Miller, and

Godinez are at varying levels of the Cook County Jail hierarchy, the facts alleged plausibly

indicate that all three of them would have been exposed to the information about the

malfunctioning cell doors. While the complaints of inmates alone may not necessarily lead to the

inference that Dart, Miller, or Godinez, as individuals in supervisory positions, knew about the

problem, the visit from DOJ officials and their report of the malfunctioning doors to Cook

County employees, (*id.* ¶ 14), plausibly suggest that even prison officials who did not have direct

contact with inmates knew of the malfunctioning cell doors. The pervasiveness of the problem

and its documentation by federal authorities lead to the inference that Defendants had actual

knowledge of the substantial risk posed by the broken cell doors.

Seeking to avoid this conclusion, and apparently conceding that Brown has properly

alleged Defendants had knowledge of the faulty locks, Defendants argue that Brown's complaint

fails because there are "no allegations that the Defendants knew such a condition placed the

Plaintiff, Byron Brown, i[n] specific danger of being attacked." (R. 26, Defs.' Reply at 2.) This

argument clearly fails under *Farmer*, in which the Supreme Court emphasized that

> The question under the Eighth Amendment is whether prison officials, acting with
> deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious
> damage to his future health . . . and it does not matter whether the risk comes from
> a single source or multiple sources, any more than it matters whether a prisoner faces
> an excessive risk of attack for reasons personal to him or because all prisoners in his
> situation face such a risk.

*Farmer*, 511 U.S. at 843 (internal quotation marks and citations omitted). Thus, Brown need not

allege that Defendants had knowledge that he specifically was likely to suffer an injury due to the

malfunctioning doors because he has properly alleged that Defendants were aware of the general,

obvious risk to inmate safety posed by the problem. *See id.*, 511 U.S. at 843 ("Nor may a prison

official escape liability for deliberate indifference by showing that, while he was aware of an

obvious substantial risk to inmate safety, he did not know that the complainant was especially

likely to be assaulted by the specific prisoner who eventually committed the assault."); *Helling v.

McKinney*, 509 U.S. 25, 33 (1993) (observing that the Eighth Amendment requires a remedy for

exposure of inmates to "infectious maladies" such as hepatitis and venereal disease "even though

the possible infection might not affect all of those exposed"); *Washington*, 306 F.3d at 518

(noting that *Farmer's* standard for deliberate indifference "does not require actual knowledge of

an individualized threat—it is enough that defendants are aware that their action may cause

injury without being able to divine the most likely victim") (internal quotation marks and

citations omitted).  Because Brown has alleged that Defendants knew there was a widespread problem of faulty cell doors, Brown need not have alleged that they knew that Brown specifically was in danger of being attacked.

Regarding the second part of the deliberate indifference inquiry, there is no dispute that Brown properly alleges that Defendants failed "take reasonable measures to abate" the problem of the malfunctioning cell doors. *Borello*, 446 F.3d at 747.  Brown claims that work orders submitted to repair the cell doors were never executed, and that he complained about his door, but it was never repaired.  (R. 5, Am. Compl. ¶¶ 12-13.)  Accordingly, the Court finds that the facts alleged in Brown's complaint plausibly suggest that Defendants failed to protect Brown from the substantial risk posed by the malfunctioning cell doors in violation of their duties under the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 19) is denied.  The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case.  The parties shall appear for a status on December 13, 2011, at 9:45 a.m. to set a firm litigation schedule.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** November 21, 2011